# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

_____

| In Re | |
|---|---|
| BRADFORD THORP and CINDY L. THORP, | **Bankruptcy Case No. 08-01085-JDP** |
| **Debtors.** | |

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

    D. Blair Clark, Boise, Idaho, Attorney for Debtors.

    R. Wayne Sweney, Lukins & Annis, Coeur d'Alene, Idaho, Attorney for Mountain West Bank.

    Jeremy Gugino, Boise, Idaho, Chapter 7 Trustee.

### *Introduction*

    Debtors Bradford and Cindy Thorp filed a chapter 7 bankruptcy

petition and claimed a homestead exemption on a house and property

located on W. Sagwon Dr. in Kuna, Idaho.  Docket Nos. 1; 18; 19; 24.  Both

Creditor Mountain West Bank and chapter 7 trustee Jeremy Gugino filed

MEMORANDUM OF DECISION - 1

objections to Debtors' claimed homestead exemption.  Docket Nos. 22; 30.

The Court conducted a hearing on the objections on September 30, 2008, at

which time it suggested to the parties that they consider the implications, if

any, of the Panel's decision in *Arkison v. Gitts (In re Gitts)*, 116 B.R. 174 (9th

Cir. BAP 1990), *aff'd,* 927 F.2d 1109 (9th Cir. 1991) on the outcome of the

contest.  The parties were given an additional ten days in which to file

supplemental briefing, after which the Court took the matters under

advisement.

On the Court has now considered the submissions of the parties,

including the supplemental briefing, as well as the arguments of counsel,

and the applicable law.  This Memorandum constitutes the Court's

findings of fact and conclusions of law and resolves the objections.  Fed. R.

Bankr. P. 7052; 9014.[1]

## *Facts and  Procedural Background*

On the petition date, Debtors lived in a house on N. Locust Grove in

---

[1] Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all rule references are to the
Federal Rules of Bankruptcy Procedure, Rules 1001– 9037.

MEMORANDUM OF DECISION - 2

Kuna.  Docket No. 1.  However, they claimed their homestead exemption on the Sagwon Dr. property.  Creditor objected to the claim of exemption because Debtors had never occupied the Sagwon Dr. property as a residence.  Docket No. 22.  Debtors responded to this objection by noting that, before filing their bankruptcy petition, they had executed and recorded a declaration of homestead on the Sagwon Dr. property.  Docket No. 23.

Trustee then filed an objection to the claim of exemption, arguing that the declaration of homestead was invalid because Debtors did not also file a declaration of abandonment on the Locust Grove property where they were residing at the time they filed their petition.  Docket No. 30. Debtors responded and argued first, that they had, after filing for bankruptcy relief, recorded a post-petition "amended" declaration of homestead to include the necessary declaration of abandonment, and that this amended declaration "related back" in time to the earlier declaration. Docket No. 31.

Second, Debtors responded that since they had no equity above the

MEMORANDUM OF DECISION - 3

amount owing on the liens on the Locust Grove property, as evidenced by the fact that they had entered into a contract for a "short sale" of the home, they could not claim a homestead exemption on that property as a matter of law. *Id*.

### *Analysis and Disposition*

In resolving whether Debtors' exemption should be allowed, the Court first examines the relevant statutory and case law, and then applies that law to the facts of this case.

A. <u>*White v. Stump*</u>

*White v. Stump*, 266 U.S. 310 (1924), is a case decided by the U.S. Supreme Court construing Idaho law. In *White*, the debtors recorded a declaration of homestead one month after their bankruptcy petition was filed. The Supreme Court found that, under Idaho law in effect at the time,[2] the exemption arose when the declaration of homestead was

---

[2] The statute in effect at the time provided:
> In order to select a homestead, the husband or other head of a family, or in case the husband has not made such selection, the wife, must execute and acknowledge, in the same manner, as a conveyance of

MEMORANDUM OF DECISION - 4

properly recorded, and that prior to that time, the land was subject to

execution and attachment by the debtors' creditors.  The Court held that

"where a levy is affected while the land is in that condition the subsequent

making and filing of a declaration neither avoids the levy nor prevents a

sale under it."  *White*, 266 U.S. at 311.  While the district and circuit courts

in *White* had held that the exemption should be allowed if a debtor met all

of the necessary requirements within a reasonable time after the filing of

the bankruptcy petition, the Supreme Court rejected that position.  Instead,

the Supreme Court held that "the point of time which is to separate the old

situation from the new in the bankrupt's affairs is the date when the

petition is filed."  *Id.* at 313.  As the Court explained, the "exception [to

execution and attachment for exempt property], as its words and the

context show, is not of property which would or might be exempt if some

condition not performed were performed, but of property to which there is

under the state law a present right of exemption – one which withdraws

---

real property is acknowledged, a declaration of
homestead, and file the same for record.
Section 5462, Idaho Compiled Statutes, 1919.

MEMORANDUM OF DECISION - 5

the property from levy and sale under judicial process." *Id*.

After concluding that the petition date is the cutoff date for determining exemptions, the *White* court decided that the property at issue was not exempt because "[o]ne of the conditions on which it might have been rendered exempt had not been performed . . . .". *Id*. at 314.

The lesson of *White*, that all acts required to perfect a homestead exemption must be successfully concluded prior to bankruptcy for the exemption to apply, has been the law in Idaho for many years. Debtors, however, contend that newer case law, including *Gitts*, has altered the importance of *White.*

### B. *In re Gitts*

In *Gitts*, the Panel gave effect to a Washington declaration of homestead recorded after the filing of the debtor's bankruptcy petition. In that case, the debtors lived in a home they could not afford. They filed their bankruptcy petition, and the next day, recorded a declaration of homestead for a different parcel of property. While they owned this other parcel, they did not yet occupy it as their residence, although they

MEMORANDUM OF DECISION - 6

intended to move there in the near future.  Approximately six weeks later, the debtors recorded an abandonment of homestead on the home in which they resided on petition day.  The trustee objected to the debtors' claim of exemption.

The *Gitts* panel acknowledged that Washington case law held that a declaration of homestead, recorded by a debtor subsequent to entry of a judgment against him or her, but before execution on the judgment occurred, is enforceable.  *Gitts*, 116 B.R. at 178; Wash. Rev. Code § 6.13.070 (1989).  This feature of the Washington statute provides the key distinction between *Gitts* and *White*.  Because Washington law allows a declaration of homestead to be recorded right up to the date an execution sale of the debtor's property is set to occur, the Panel held that the debtors' post-petition declaration was enforceable.  *Gitts*, 116 B.R. at 180.  The *Gitts* panel noted that while the chapter 7 trustee, under § 544, is armed with the rights and powers of a judicial lien holder as of the commencement of the case, the Code does not presume that such a hypothetical judgment lien creditor has held an execution sale as of the filing date.  *Gitts,* 116 B.R. at

MEMORANDUM OF DECISION - 7

179.  As a result, since a post-bankruptcy homestead declaration is effective in Washington as against any judgment lien holder that has not yet caused the sale of the debtors' property, it was also enforceable against the debtors' chapter 7 trustee.

C.  Idaho's Current Homestead Law

The Idaho homestead statutes applicable in this case are very similar in operation to the laws in effect when *White* was decided.  Although there was no provision for an "automatic" homestead exemption at that time, such that every homestead had to be based upon a recorded declaration, the types of judgment-debts to which the homestead exemption was subject is the same today as it was in the 1920's.

Specifically, the current Idaho Code provides, in pertinent part:

> The homestead is subject to execution or forced sale in satisfaction of judgments obtained:
> > (1) before the homestead was in effect, and which constitute liens upon the premises; or in an action in which an attachment was levied upon the premises before the homestead became effective.

MEMORANDUM OF DECISION - 8

Idaho Code § 55-1005.  When *White* was decided, the same judgment lien

enforcement mechanism was in place:

> The homestead is subject to execution or forced
> sale in satisfaction of judgments obtained:
> > 1.  Before the declaration of
> > homestead was filed for record, and
> > which constitute liens upon the
> > premises; or in an action in which an
> > attachment was levied upon the
> > premises before the filing of such
> > declaration.

Section 5441, Idaho Compiled Statutes, 1919.  As can be seen, the only

difference in the two statutes reflects that in 1919, a debtor had to record a

declaration of homestead in order for a homestead to exist, whereas, today,

a homestead arises automatically when the property is occupied as the

debtor's residence.  Under both systems, the homestead exemption is

subject to liens and attachments existing prior to the date the homestead

comes into effect.  As a result, *White* would seem to remain good law, and

the Court must measure the status of Debtors' homestead on the date the

bankruptcy petition is filed.  In other words, the holding in *Gitts* does not

help Debtors because of the difference between the homestead laws of

MEMORANDUM OF DECISION - 9

Idaho and those of Washington.

The Court's conclusion is bolstered by its prior decisions.  In *In re James*, this Court considered the trustee's objection to a declaration of homestead recorded two months post-petition.  The Court noted that the "relevant date for determining the status of a claim of homestead exemption is the date of filing."  *In re James*, 05.1 I.B.C.R. 16, 16-17 (Bankr. D. Idaho 2005) (citing *Culver, L.L.C. v. Chiu (In re Chiu)*, 266 B.R. 743, 751 (9th Cir. BAP 2001)).  In *In re James*, the debtors did not qualify for the automatic homestead, but rather attempted to declare a homestead on a parcel of property they owned but did not yet reside on.  This Court stated that "when a declaration is required, as is the case here, the homestead exemption will not arise until the declaration is actually recorded."  *In re James*, 05.1 I.B.C.R. at 17.  The Court then relied upon *White v. Stump* and stated:

> While *White* was decided under the Bankruptcy
> Act and interpreted the Idaho homestead statutes
> before Idaho recognized "automatic" homestead
> exemptions, the holding of that case would
> appear to control here: when a declaration of

MEMORANDUM OF DECISION - 10

> homestead is required by Idaho law, the
> homestead exemption "arises when the
> declaration is filed, and not before.  Up to that
> time the land is subject to execution and
> attachment like other land."  In other words, if a
> declaration has not been executed and properly
> recorded on the date the bankruptcy petition is
> filed, the debtors' real property is not exempt.

*Id.* at 17 (quoting *White*, 266 U.S. at 313-14 ) (internal citations omitted).

D.  <u>Status of Debtors' Homestead on Petition Day</u>

On June 9, 2008, the date Debtors filed their bankruptcy petition,

they were living at the Locust Grove property, but intended to move to the

Sagwon Dr. property.  This fact is evidenced by the pre-petition

recordation of Debtors' Declaration of Homestead claiming a homestead

on the Sagwon Dr. property.  Attachment to Docket No. 23.

Under Idaho law, a homestead attaches automatically "from and

after the time the property is occupied as a principal residence by the

owner . . . ."  Idaho Code § 55-1004(1).  Thus, Debtors had the benefit of an

automatic homestead exemption in the Locust Grove property from the

time they first occupied it as their residence, and that automatic

MEMORANDUM OF DECISION - 11

homestead exemption would continue in effect until it was displaced by

declaration, or some other action was taken by Debtors (*i.e.,* sale of the

home, cessation of occupancy, etc.).[3]

Debtors attempted to claim a homestead in the Sagwon Dr.

property, where they did not currently reside, by recording a Declaration

of Homestead on May 20, 2008. Idaho Code § 55-1004, in mandatory

terms, establishes the circumstances when a homestead by declaration is

necessary. It provides that:

> An owner who selects a homestead from
> unimproved or improved land that is not yet
> occupied as a homestead *must* execute a
> declaration of homestead and file the same for
> record in the office of the recorder of the county
> in which the land is located. However, if the
> owner also owns another parcel of property on

---

[3] No evidence was presented to show that Debtors' automatic homestead
did not attach to the Locust Grove property prior to the filing of the Declaration
of Homestead. Debtors owned the home located on the Locust Grove property,
as is evidenced by the fact that they entered into a contract to sell that home, and
Debtors lived in the home at the time they filed their petition. Such ownership
and occupation as their principal residence results in an automatic homestead
under Idaho Code § 55-1004(1). Debtors' contention that because they lacked
equity in the Locust Grove property, no automatic homestead arose, is discussed
later in this decision.

MEMORANDUM OF DECISION - 12

> which the owner presently resides or in which the
> owner claims a homestead, the owner *must also*
> execute a declaration of abandonment of
> homestead on that other property and file the
> same for record with the recorder of the county in
> which the land is located.

Idaho Code § 55-1004(2) (emphasis supplied).

Debtors' initial Declaration of Homestead, recorded pre-petition,

reads as follows:

> KNOWN [sic] ALL MEN BY THESE
> PRESENTS That I, BRADFORD A. THORP and I,
> CINDY L. THORP, of Boise, County of Ada, State
> of Idaho, do hereby certify and declare that we
> are now married and that we claim as a
> Homestead the following real property:

> Lot 11, Block 5, Denali Heights
> Subdivision, according to the official plat
> thereof filed in Book 96 of Plats at pages
> 11856 through 11858, records of Ada
> County, Idaho, also known as 526 W.
> Sagwon Drive, Kuna, Idaho 83634[.] [sic]

> That it is our intention to use and claim the
> said premises above described, together with the
> dwelling house thereon and its appurtenances, as
> a Homestead, and we do hereby select and claim
> the same as a Homestead.

MEMORANDUM OF DECISION - 13

DATED this 16th day of May, 2008.
/s/
/s/

Attachment to Docket No. 23.  The Court finds this declaration to be

deficient in two respects.

First, the statute is very specific concerning the content required for

an effective declaration of homestead.  Idaho Code § 55-1004(3) provides:

> (3) The declaration of homestead *must contain*:
> (a) A statement that the person making it is
> residing on the premises or intends to reside
> thereon and claims the premises as a homestead;
> (b) A legal description of the premises; and
> (c) An estimate of the premises actual cash value.

Idaho Code § 55-1004(3) (emphasis supplied).

Debtors' initial declaration did not contain an estimate of the actual

cash value of the premises claimed as exempt.  In *In re Field*, 05.1 I.B.C.R.

11, 15 (Bankr. D. Idaho 2005), the debtor attempted to utilize a declaration

of nonabandonment in place of a declaration of homestead.  This Court

stated:

> Although the two statutes require similar
> information, a declaration of homestead requires

MEMORANDUM OF DECISION - 14

> a statement of the property's actual cash value
> while a declaration of nonabandonment does not.
> Debtor's declaration does not contain any
> statement of the Property's estimated cash value.
> The failure to include a required element, such as
> the statement of value, would render Debtor's
> declaration of nonabandonment defective under
> Idaho Code § 55-1004(3) were it to be considered
> under those provisions.

*Id.* (internal citations omitted).  As the Declaration of Homestead employed here by Debtors fails to include a required element, it was ineffective to create a homestead exemption.

Debtors' initial declaration is also deficient because they failed to record the required declaration of abandonment as to the automatic homestead then existing on the Locust Grove property.  The statutes plainly require that both a declaration of homestead and a declaration of abandonment must be recorded, and this Court has enforced that requirement.  *In re Field,* 05.1 I.B.C.R. at 15; *In re Moore*, 01.4 I.B.C.R. 147 (Bankr. D. Idaho 2001).  Here, Debtors filed a declaration of homestead, but failed to file the corresponding, and required, declaration of abandonment.  Because the statute unambiguously requires that both be

MEMORANDUM OF DECISION - 15

recorded, the Court finds the failure to do so is a fatal flaw in Debtors'

quest to obtain a homestead on the Sagwon Dr. property.

Debtors contend that there was no need to file a declaration of

abandonment as to the Locust Grove property in this case because they

had no equity in the home.  In Debtors' view, because they lacked equity,

no automatic homestead arose when they occupied the property as their

residence, and thus there was no existing homestead to abandon.

Debtors' construction of the Idaho statutes is simply incorrect.

According to Idaho Code § 55-1004(1), a homestead exemption

automatically arises, "from and after the time the property is occupied as a

principal residence by the owner".  Nothing in this statute requires that

Debtors possess equity in the value of the property above the amount of

outstanding liens and mortgages, as a condition for the homestead to arise.

Instead, there are only two elements which must coincide for an automatic

homestead to arise:  the debtor must own the property; and the debtor

must occupy the property as his or her residence.  Since Debtors fulfilled

both requirements on the Locust Grove property, an automatic homestead

MEMORANDUM OF DECISION - 16

arose in their favor when they occupied it, and thus formal abandonment
of that automatic exemption was required as a condition of declaring a
different homestead.[4]

For these reasons, the Court concludes that Debtor's May 20, 2008
Declaration of Homestead was insufficient to create a valid homestead
exemption by declaration in the Sagwon Dr. property.  In addition, even
were it not deficient, without an accompanying declaration of
abandonment as to the Locust Grove property, Debtors' Declaration did
not establish a homestead exemption in the Sagwon Dr. property.[5]

In the case at issue, for purposes of Idaho Code § 55-1004(2), the
Sagwon Dr. property was "improved land not yet occupied as a

---

[4]  It is true that for Debtors to realize the benefits of a homestead
exemption in the event of a forced sale of their property, there must be some
equity above the amount owed to mortgage holders.  But the existence of equity
is not a condition to establishment of an automatic homestead exemption in the
first instance.  In other words, while in this case Debtors' automatic homestead
exemption may have been valueless, it was effective nonetheless.

[5]  In so concluding, the Court is mindful that the homestead statutes are
to be liberally construed in favor of the debtor.  *In re Field*, 05.1 I.B.C.R. at 15.
However, the requirements of the Idaho statutes for creation of a homestead by
declaration are clear, and the Court can not overlook them in the name of liberal
construction.

MEMORANDUM OF DECISION - 17

homestead," and as a result, until Debtors moved onto that property and made it their homestead, no exemption in that property would arise unless and until a declaration of homestead had been filed and recorded.  *See In re Kline*, 05.3 I.B.C.R. 65, 67 (Bankr. D. Idaho 2005).  The measure is whether the declaration is in place at the time the petition was filed.  Here, the only declaration in place on petition day was one that is deficient and therefore ineffective to displace the homestead automatically protecting the Locust Grove property.

E.   Relation Back

Debtors attempted to remedy the defects in their initial declaration discussed above by recording an Amended Declaration of Homestead ("Amended Declaration").  Second Attachment to Docket No. 31.[6]  The Amended Declaration cured both defects in the May 20, 2008 declaration.[7]

---

[6]  The Amended Declaration is dated May 16, 2008, but the notary attested to their signatures on July 8, 2008, and the county recorder apparently received the document for recording on July 14, 2008.  *Id*.

[7]  At the hearing, there was a discussion between counsel and the Court concerning whether a homestead declaration and an abandonment of a homestead must be executed and recorded as separate documents.  While it does

MEMORANDUM OF DECISION - 18

Debtors argue that the Amended Declaration should be respected, because it effectively "relates back" in time to the date of recording of the initial declaration.

Debtors have not cited, nor has the Court located, any statute or case law which directly supports Debtors' position. Debtors instead cite cases involving legal entities other than homestead declarations, and attempt to extrapolate from these decisions the notion that relation back is a commonly used doctrine under the law and is applicable here. *See Anthony v. Cambra*, 236 F.3d 568 (9th Cir. 2000) (habeas corpus petitions); *Chazen v. Ciolino (In re Ryan)*, 369 B.R. 536 (N.D. Cal. 2007) (judgments); *Sartain v. Fidelity Fin. Servs.*, 116 Idaho 269 (Idaho Ct. App. 1989) (corrective deeds).

To the contrary, these authorities establish that relation back is a narrow doctrine. For example, in *In re Ryan*, the court allowed certain judgment liens to relate back in priority to the date that certain

---

not appear that the statute requires such, because of its decision, the Court need not reach that question.

MEMORANDUM OF DECISION - 19

prejudgment attachment liens were effective, but the court would not

allow any judgment amount in excess of the attachment lien amount to

relate back. *Id*. at 547. Hence, the doctrine was narrowly applied.

Another example exists in California, where state law allows the

relation back of a subsequent homestead declaration only under very

specific circumstances. When a previous homestead is sold, and the

proceeds are properly protected and timely reinvested in another

dwelling, the declaration of homestead filed on the new home relates back

to the homestead declaration filed on behalf of the prior home. Cal.C.C.P.

§ 704.960; *Redwood Empire Prod. Credit Ass'n v. Anderson (In re Anderson)*,824

F.2d 754, 760 (9th Cir. 1987); *In re Yau*, 115 B.R. 245, 250 n. 6 (Bankr. C.D.

Cal. 1990).

Additionally, in *Burbank v. Kirby*, 55 P. 295 (Idaho 1898), the case

involved a declaration of homestead with a defective acknowledgment.

The homestead declarant sought reformation or correction under state

MEMORANDUM OF DECISION - 20

statute,[8] and more importantly here, sought to have the reformation relate

back to the date the original declaration of homestead was filed of record.[9]

The Idaho Supreme Court denied such relief on the basis that homesteads

are not conveyances, and the reformation statute was intended to apply

only to conveyances. *Id*. at 296. Hence, even when faced with something

"corrective", and in the acknowledgment rather than the body of the

declaration, Idaho courts have applied the relation back doctrine narrowly,

and strictly construed the statutes allowing it.

It would require a broad construction of the relation back doctrine

for this Court to allow the Amended Declaration to relate back when it so

clearly expands the scope of the original declaration. In this instance,

Debtors' Amended Declaration was not merely "corrective", but

---

[8] The statute at issue in *Burbank* read: "When the acknowledgment or proof of the execution of an instrument is properly made, but defectively certified, any party interested may have an action in the district court to obtain a judgment correcting the certificate." Section 2971, Rev. St. Idaho (1894). The current version of the statute, found at Idaho Code § 55-725, is identical.

[9] The declarant sought relation back of the reformed declaration in order to thwart a judgment lien his creditor had placed upon the property in the interim.

MEMORANDUM OF DECISION - 21

substantively altered the rights of other parties.

At least one other court is in accord.  In *In re Michael*, the bankruptcy

court in Montana held that:

> Montana has no equivalent automatic homestead
> exemption statute.  On the petition date, the
> Michaels simply did not have a valid homestead
> exemption under Montana law and § 522(b).
> *Post-petition amendment and recordation of a
> homestead declaration . . . does not relate back to
> change the circumstances under the general rule under
> § 522(b) as of the petition date.*

*In re Michael*, 183 B.R. 230, 236 n. 6 (Bankr. D. Mont. 1995) (emphasis

added).

There are a number of other considerations which discourage the

Court from allowing relation back under these facts.  First, the general rule

is that relation back will not be allowed when it affects the rights of third

parties.  *Sartain v. Fidelity Fin. Servs., Inc.*, 775 P.2d 161, 164 (Idaho Ct. App.

1989); C.J.S. *Deeds* § 166.  Here, Debtors acted only after Trustee and

Creditor objected to Debtors' exemption claim.  It is Debtors' responsibility

to perfect their exemption claim; they should not be able to rely upon

MEMORANDUM OF DECISION - 22

others to point out their errors.  Moreover, application of the relation back

doctrine would be prejudicial to Debtors' creditors, as it would remove a

parcel of property from the bankruptcy estate and Trustee's

administration for the creditors'  benefit.

Second, allowing Debtors' post-petition exemption by amendment

and relation-back would require that the Court overlook the language of

§ 522(b), as well as the Court's prior decisions, which require that

exemptions be determined as of the petition date.  This approach would

engender uncertainty concerning the extent of Debtors' estate, and would

inhibit Trustee's ability to efficiently administer a debtor's assets for the

benefit of creditors.  If relation back were allowed in this case, in essence to

correct an error, under what circumstances would it not be allowed in

future cases?  Debtors, creditors and the trustee ought to be able to know

what exemptions are claimed as of the petition date without the

requirement of a case-by-case review by the Court.

Based upon these considerations, the Court declines to apply the

relation back doctrine under these circumstances.  As a result, Creditor's

MEMORANDUM OF DECISION - 23

and Trustee's objections to Debtors' claim of a homestead exemption in the

Sagwon Dr. property will be sustained.

### Conclusion

As established decades ago in *White v. Stump,* in Idaho, the validity

of a debtor's homestead exemption in bankruptcy must be determined as

of the date the petition is filed.  Applying that standard in this case,

Debtors' attempt to declare a homestead exemption in the Sagwon Dr.

property was ineffective.  Their initial declaration was deficient under the

Idaho statutes, and their Amended Declaration, while adequate to cure the

deficiencies, did not effectively relate back in time.

The objections of both Creditor and Trustee to Debtors' homestead

exemption claim will be sustained, and the exemption will be disallowed.

A separate order will be entered.

Dated: November 7, 2008

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 24